UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
ROGER HERBERT,                    )
          Petitioner,             )
                                  )
     v.                           )          Civil Action No. 06cv10036-NG
                                  )
THOMAS DICKHAUT                   )
          Respondent.             )
_____)
GERTNER, D.J.:

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS
March 19, 2010

    This case comes before the court on respondent's motion to dismiss Roger Herbert's

("Herbert") petition for habeas corpus, which he brings pursuant to 28 U.S.C. § 2254.  Herbert

asserts numerous constitutional defects in his trial and in his representation both at trial and on

direct appeal.  On the assented motion of the parties, the proceedings have been bifurcated such

that, at this time, the only issue before the Court is whether Herbert's petition is timely under 28

U.S.C. § 2244(d).  And central to that determination is the application of the "prison mailbox

rule."  The mailbox rule, simply put, holds "that a pro se prisoner's motion . . . is filed on the date

that it is deposited in the prison's internal mail-system . . . provided that the prisoner utilizes, if

available, the prison's system for recording legal mail."  Morales-Rivera v. United States, 184

F.3d 109 (1st Cir. 1999).  For the reasons stated herein, notably the application of that rule to the

facts of this case, I find that the petition is timely and, therefore, the motion to dismiss

(document #18) is **DENIED**.

I.    PROCEDURAL BACKGROUND

    On March 8, 1991, Herbert was convicted of armed robbery and first-degree felony

murder by a jury in the Superior Court of Suffolk County, Massachusetts.  See Pet'r.'s Mem.

Regarding Timeliness Ex. 1 (document # 17-2) [hereinafter State Court Docket].  Herbert

appealed, and the Massachusetts Supreme Judicial Court ("SJC") affirmed his conviction on

November 9, 1995.  See Commonwealth v. Herbert, 421 Mass. 307 (1995).  Herbert did not

pursue a direct appeal to the United States Supreme Court.  As such, his conviction became final

on February 6, 1996, when the ninety-day period for seeking certiorari in the Supreme Court

expired.  See Voravongsa v. Wall, 349 F.3d 1, 2 (1st Cir. 2003).

After his conviction was affirmed, Herbert claims that he mailed a motion for a new trial

and a motion for appointment of counsel to the Suffolk County Superior Court on December 17,

1996 -- 316 days after his conviction was finalized and 238 days after the Anti-Terrorism and

Effective Death Penalty Act ("AEDPA") became effective on April 24, 1996.[1]  The motion for

appointment of counsel was received and docketed on December 19, 1996, see State Court

Docket at Paper No. 42; however, the motion for a new trial was never docketed.  The Superior

Court never took any action on either motion.  Six years later, Herbert filed renewed motions for

a new trial and for appointment of counsel, which the Superior Court received and docketed on

December 19, 2002.[2]  See State Court Docket at Paper No. 45.  This time around, the Superior

Court did rule on the motions, denying both on November 20, 2003.  See State Court Docket at

Paper No. 48.

On February 10, 2004, Herbert sought permission from a "gatekeeper" justice of the SJC

to appeal the denial of his motion to the full SJC, pursuant to Mass. Gen. L. ch. 278 § 33E.  See

[1] In Gaskins v. Duval, 183 F.3d 8, 9 (1st. Cir. 1999), the First Circuit held that, for individuals convicted prior to AEDPA's effective date, there exists a one-year grace period running from that date within which to file a habeas petition.  As such, Herbert's AEDPA clock started running on April 24, 1996.

[2] Herbert asserts that he would have renewed his motion for a new trial earlier, had he not been transferred from his original prison, where a jailhouse lawyer had helped him prepare the initial motion.  Herbert Aff. ¶ 7 (document # 17B).  It should be noted that Herbert's IQ score is between seventy-six and eighty, placing him into the "borderline range of intellectual functioning."  Shapiro Aff. ¶ 5 (document #17E).

Pet'r.'s Mem. Regarding Timeliness Ex. 4 (document # 17-5).  The gatekeeper justice denied

Herbert permission to appeal to the SJC on July 15, 2004.  Herbert filed a motion to reconsider

before the gatekeeper justice on July 29, 2004, which was denied on August 4, 2004.  Id.

Herbert then sought to appeal the gatekeeper's decision to the full SJC, which dismissed his

appeal on December 12, 2005.  See Commonwealth v. Herbert, 445 Mass. 1018 (2005).  Herbert

filed his habeas petition in this court twenty-five days later on January 5, 2006.[3]

## II.    ANALYSIS

The timeliness of Herbert's petition turns on two key periods of time.   The first is the

period between December 17, 1996, when Herbert claims to have mailed his first motion for a

new trial, and November 20, 2003, when Herbert's request for a new trial was finally ruled on

and denied by the state trial court.  Whether or not this period ought to be tolled turns on the

meaning of the word "filed" in 28 U.S.C. § 2244(d)(2) and on the application of the "prisoner

mailbox rule."  See Morales-Rivera v. United States, 184 F.3d 109 (1st Cir. 1999).  The second

---

[3] To assist the reader, the pertinent dates are summarized in the table below:

| | |
|---|---|
| Mar. 8, 1991 | Herbert is convicted. |
| Nov. 9, 1995 | Herbert's conviction is affirmed by the SJC. |
| Feb. 6, 1996 | Herbert's conviction becomes final upon expiration of the time period for filing a petition for certiorari with the United States Supreme Court. |
| April 24, 1996 | AEDPA becomes effective. |
| Dec. 17, 1996 | Herbert files a motion for a new trial and a motion for appointment of counsel, 238 days after AEDPA took effect. |
| Dec. 19, 1996 | The motion for appointment of counsel is received and docketed. |
| Dec. 19, 2002 | Herbert files renewed motions for a new trial and for appointment of counsel, both of which are received and docketed. |
| Nov. 20, 2003 | The motion for a new trial is denied by the trial court. |
| Feb. 10, 2004 | Herbert seeks leave from a gatekeeper justice of the SJC to appeal his denied motion to the full SJC. |
| July 15, 2004 | The gatekeeper justice denies leave to appeal. |
| July 29, 2004 | Herbert files a motion to reconsider before the gatekeeper justice. |
| Aug. 4, 2004 | The gatekeeper justice denies the motion to reconsider. |
| Sept. 3, 2004 | Herbert appeals the gatekeeper justice's opinion to the full SJC. |
| Dec. 12, 2005 | The SJC dismisses Herbert's appeal. |
| Jan. 6, 2006 | Herbert files the instant petition for habeas corpus. |

key period is the time between February 10, 2004, the date that Herbert sought review of his

denied motion in the SJC, and December 12, 2005, the date the full SJC dismissed his appeal.

Whether or not this entire period ought to be tolled turns on the meaning of the word "pending"

in 28 U.S.C. § 2244(d)(2), for which we must rely on state law.  See Currie v. Matesanz, 281

F.3d 261 (1st Cir. 2002).

      If both of these time periods are tolled, then 263 non-tolled days will have elapsed since

Herbert's AEDPA clock started running on April 24, 1996, and his petition will be timely.[4]

However, if either of these periods are not tolled, then Herbert's petition will be multiple years

late.

### A.        The Prisoner Mailbox Rule

      The question of whether or not Herbert's AEDPA clock stopped ticking on December 17,

1996 -- the day he claims to have mailed his motion for a new trial to the Superior Court --

---

[4] An alternative reading of the state-court procedural history would charge Herbert with an additional fifty-three days for the period of time between the denial of his motion for a new trial on November 20, 2003, and his filing of an appeal with the gatekeeper justice on February 10, 2004. Because an appeal before a gatekeeper justice must "be filed within 30 days of the denial of a motion for a new trial," Mains v. Commonwealth, 433 Mass. 30, 36 n.10 (2000), Herbert's appeal should have been filed by December 20, 2004, and was therefore fifty-three days late.

      In Currie, 281 F.3d 261, the First Circuit suggested that "an application for post conviction review ceases to be pending once the statutory period for appeal expires, although it may be 'resuscitated' if the state courts agree to hear an untimely appeal." Id. at 269.  Under such a rule, "in the case of an untimely appeal, AEDPA's statute of limitations will be tolled from the date on which the application for post conviction relief is filed in the state trial court until the expiration of time to appeal, and then again from the date on which the untimely appeal is filed, until the appeals court rejects it on the merits." Id. (citing Fernandez v. Sternes, 227 F.3d 977, 980 (7th Cir. 2000)).  This approach would charge Herbert an additional fifty-three days.  However, the First Circuit acknowledged that "[t]he Ninth Circuit has taken a different approach, holding that whenever a state appellate court reaches the merits of an untimely appeal, the original application for post conviction relief will be deemed to have been pending from the date it first was filed in the trial court." Id. at 269 n.10 (citing Saffold v. Newland, 250 F.3d 1262 (9th Cir. 2000), overruled on other grounds sub nom, Carey v. Saffold, 536 U.S. 214 (2002)).  Under the Ninth Circuit's approach, the fifty-three day window would not count against Herbert in this case.

      The First Circuit "express[ed] no view on the propriety of [the Ninth Circuit's] approach," Currie, 281 F.3d at 269 n.10, thereby leaving the question open as to how such time periods ought to affect the timeliness of a habeas petition.  Here, the fifty-three day period, if charged to Herbert, would bring his total non-tolled elapsed time up to 316 days and would therefore not affect the ultimate timeliness of his petition.  As such, I decline to reach the question left open in Currie.

depends on the application of the prisoner mailbox rule.  Though the First Circuit has clearly

held that the prisoner mailbox rule applies to petitions filed in federal court, see Morales-Rivera

v. United States, 184 F.3d 109 (1st. Cir. 1999), it has not "express[ed] an opinion on the

applicability vel non of the prisoner mailbox rule to a state-court petition for post-conviction

relief." Donovan v. Maine, 276 F.3d 87, 90 (1st Cir. 2002).  "However, . . . to the extent (if at

all) this is a question of state law," id. at n.3, the question left open in Donovan does not bear on

this case, as the prisoner mailbox rule applies in Massachusetts.  See Commonwealth v.

Hartsgrove, 407 Mass. 441, 444 (1990) (holding that "an incarcerated pro se inmate['s]" filing

"should be deemed to have occurred on the inmate's relinquishment of control of his [filing] to

the prison authorities").[5]  Because the authoritative state and federal courts both employ the

prisoner mailbox rule, I apply it here.

The mailbox rule, simply put, holds "that a pro se prisoner's motion . . . is filed on the

date that it is deposited in the prison's internal mail-system . . . provided that the prisoner

utilizes, if available, the prison's system for recording legal mail." Morales-Rivera, 184 F.3d at

109.  In instances where there is no system in place for recording legal mail, a court may rely on

other evidence to establish whether and when a filing was actually mailed.  See Lattimore v.

Dubois, 311 F.3d 46, 54 n.5 (1st Cir. 2002) (relying on a "a fair inference that the petition was

---

[5] Though the SJC adopted the prisoner mailbox rule in a case interpreting Mass. R. App. P. 4(b), there is no principled reason to believe that the Massachusetts courts would not apply the same rule to a motion for a new trial under Mass. R. Crim. P. 30.  Nothing in the Hartsgrove opinion suggests that the SJC intended its holding to be read so narrowly.  To the contrary, the court emphasized the need to adopt "[a] flexible approach to the rules." Hartsgrove, 407 Mass. at 444.  It is also worth noting that, in reaching its conclusion, the SJC explicitly relied on the federal judiciary's adoption of the mailbox rule.  See id. at 445 ("In reaching our conclusion, we have looked to the United States Supreme Court's interpretation of a parallel Federal rule." (citing Houston v. Lack, 487 U.S. 266 (1988)).  Given the SJC's broad reasoning that "[i]t would be unfair to hold the defendant accountable for the vagaries . . . of the prison mail system," id., and its reliance on the Supreme Court's holding in Houston v. Lack, there is no reason to think that the Massachusetts mailbox rule does not apply to state post-conviction relief.  Cf. Morales-Rivera, 184 F.3d at 110 (noting that "the[] considerations" in the Supreme Court's holding in Houston "apply with equal force" to post-conviction relief).

placed in the mail" when the prison "where the petitioner is incarcerated, does not keep a log of

outgoing legal mail"); <u>Casanova v. Dubois</u>, 304 F.3d 75, 79 (1st. Cir. 2002) (applying the rule to

Massachusetts institutions even though they lack a "process for tracking legal mail").

There is ample evidence here to support a finding that Herbert did in fact mail his motion

for a new trial to the Suffolk Superior Court on December 17, 1996.  For one thing, the motion

itself is signed and dated as of that date.  <u>See</u> Pet'r.'s Mem. Regarding Timeliness Ex. 2

(document #17-3) [hereinafter Herbert Aff.].  Multiple courts in this circuit have found such

evidence, standing alone, sufficient to satisfy the mailbox rule.  <u>See</u> <u>Guzman v. United States</u>,

No. 05-214-ML, 2007 U.S. Dist. LEXIS 3823, at *7 n.4 (D.P.R. Jan. 17, 2007) ("[U]nder the

mailbox rule, the motion will be considered filed as of the date it was signed." (citation omitted)

(citing <u>Morales-Rivera</u>, 184 F.3d at 110)); <u>Blackmer v. Warden</u>, No. 03-275-PB, 2004 U.S. Dist.

LEXIS 24824, at *1 n.1 (D.N.H. Dec. 9, 2004) (relying on "the date that appears on the petition"

to establish the filing date) (citing <u>Adeline v. Stinson</u>, 206 F.3d 249, 251 n.1 (2d Cir. 2000)); <u>cf.</u>

<u>Lattimore</u>, 311 F.3d at 54 n.5 ("The petition was signed and dated on Friday, April 25, 1997, and

docketed on Monday, April 28, 1997.  It is a fair inference that the petition was placed in the

mail on April 25, 1997.").  <u>But see</u> <u>Parrila Sanes v. United States</u>, No. 98-123-PG, 2005 U.S.

Dist. LEXIS 40294, at *20 (D.P.R. June 9, 2005) ("Petitioner signed his petition on September

24, 2002, which in itself is not conclusive.").

In this case, the date written on the motion itself is not the only evidence indicating when

it was filed; to the contrary, "the record provides additional verification of the date that [the

petitioner] placed the complaint into the prison mail system."  <u>Casanova</u>, 304 F.3d at 80 n.6.

First, Herbert has declared, under oath and on pain of perjury, that he mailed his motion through

the prison mail system on December 17, 1996.  Herbert Aff. ¶ 5 (document # 17-3); <u>see</u>

Casanova, 304 F.3d at 79 (suggesting that prisoners may "demonstrate that their filings are timely by including a declaration or a notarized statement specifying the date the mail was deposited in the prison system").[6]  In addition, there is the docket entry of December 19, 1996, logging the Superior Court's receipt of Herbert's supplemental motion for appointment of counsel, which he filed along with his motion for a new trial.  Courts in this circuit have found similarly circumstantial documentary evidence sufficient to establish the filing date for purposes of the prisoner mailbox rule.  See Casanova, 304 F.3d at 80 n.6 (relying on evidence that petitioner withdrew money "in order to send his complaint via certified mail" to support finding that the complaint was in fact sent); Breese v. Maloney, 322 F. Supp. 2d 109, 112 n.2 (D. Mass. 2004) (relying on the date on "the envelope forwarding the filing fee" to set the date for the mailbox rule); cf. Dias v. Maloney, 156 F. Supp. 2d 104, 122 n.4 (D. Mass. 2001) (relying on the date of "an application to proceed in forma pauperis" to establish "the date [petitioner] filed his petition for purposes of section 2244(d)").  Given that each piece of evidence in this case has been found, in its own right, sufficient to support application of the mailbox rule, surely their combination underscores the appropriateness of a finding that Herbert's motion for a new trial was mailed, and therefore filed, on December 17, 1996.

It is worth observing that most cases applying the prisoner mailbox rule do so in situations where the filing at issue was ultimately *received*.  However, the animating logic of the mailbox rule supports applying it with equal force to situations where a filing is mailed but there is no proof that it was ever docketed or received.  As the Supreme Court observed in Houston v. Lack, the case first establishing the federal prisoner mailbox rule, "prisoners cannot take the

---

[6] Further, the testimony of Robert Perkins, the jailhouse lawyer who helped Herbert prepare his initial motion in 1996, supports Herbert's contention that the motion was in fact prepared, signed, and mailed in December of 1996.

steps other litigants can take to monitor the processing of their notices of appeal and to ensure that the court clerk <u>receives</u> and stamps their notices of appeal."  487 U.S. 266, 270–71 (emphasis added).  "[T]he vagaries of the mail" system that may cause a prisoner's filing to arrive late can just as easily cause it not to arrive at all, and the prisoner's inability to "call[] the court to determine whether the notice has been received" places him in a uniquely powerless position. <u>Id.</u> at 271.  For that reason, a prisoner's "control over the processing of his notice necessarily ceases <u>as soon as he hands it over</u> to the only public officials to whom he has access - - the prison authorities"; what happens to the filing after that point is beyond the prisoner's capacity to affect or, often, even to ascertain.  <u>Id.</u> (emphasis added).  As such, the policy goals and logic <u>Houston</u> embodies apply with equal force to late filings as they do to filings that may never arrive.

Nor does the fact that the rule's application in this case would toll a lengthy period of time -- approximately seven years -- suggest that the rule ought not to apply here.  <u>Cf.</u> 56 Am. Jur. 2d <u>Motions, Rules, and Orders</u> § 32 (2007) ("A motion filed but not ruled upon, dismissed, or withdrawn generally is still pending.").  There is no indication here that the state court would have acted on Herbert's new trial motion any more quickly had the motion been docketed or received in 1996, seeing as the Superior Court <u>never</u> acted on Herbert's initial motion for appointment of counsel, which <u>was</u> docketed on December 19, 1996.  Unfortunately, as the case-law on AEDPA's exhaustion requirement makes clear, delays of four, five, or six years are not uncommon in state courts' post-conviction processes.  <u>See, e.g.</u>, <u>Cotton v. Marshall</u>, 791 F.2d 931, No. 85-3925, 1986 U.S. App. LEXIS 19194, at *3 (6th Cir. April 17, 1986) (finding exhaustion requirement met where "petition for post conviction relief had been pending in the state court for six years and ultimately was determined by the clerk's office <u>to be lost</u>" (emphasis

added)); <u>Dangerfield v. McLemore</u>, No. 01-cv-71501-DT, 2002 U.S. Dist. LEXIS 1864, at *9 (E.D. Mich. Jan. 8, 2002) (noting the "four years that [petitioner's] post conviction motion was pending in state court"); <u>United States ex rel. Gholston v. Godinez</u>, No. 93-cv-5754, 1994 U.S. Dist. LEXIS 10367, at *2 (N.D. Ill. July 28, 1994) (noting that "[petitioner's] state court petition for post conviction relief had been pending for six years"). The fact that the exhaustion doctrine <u>excuses</u> petitioners from meeting AEDPA's exhaustion requirement when their state post-conviction relief drags on for multiple years indicates the absurdity that would result if courts then used the very same state-court delays to penalize properly filed petitions under AEDPA's tolling provisions.

As such, it is not at all surprising that a district court facing facts remarkably similar to those presented in this case tolled an equally substantial period of time, "granting [the] defendant a six-year extension of time in which to file his [petition]." <u>United States v. Jackson-Bey</u>, 302 F. Supp. 2d 621, 629 (E.D. Va. 2004). In <u>Jackson-Bey</u>, the petitioner's request for habeas relief inexplicably "disappeared from the case file" after likely having been "misplaced by the Clerk's Office." <u>Id.</u> at 628–29. Despite there being strong direct and circumstantial evidence that the filings were mailed, there was no "docket entry of any filings received by the Clerk's Office." <u>Id.</u> Given these "sufficiently extraordinary" facts, the court tolled the statute of limitations,[7] noting that because the "defendant's own conduct did not lead to the inexplicable long lapse of time in th[e] case, 'it would be unconscionable to enforce the limitation period against [him] and gross injustice would result' by doing so." <u>Id.</u> (quoting <u>Harris v. Hutchinson</u>, 209 F.3d 325, 330 (4th Cir. 2000)).

---

[7] Because <u>Jackson-Bey</u> was an application for a writ of habeas corpus by a federal prisoner under 28 U.S.C. § 2255, there was no analog to the statutory tolling provision in § 2244(d) for the court to apply. As such, it applied the doctrine of equitable tolling to find the petition timely filed. <u>See</u> <u>Jackson-Bey</u>, 302 F. Supp. 2d at 629.

Because I find that Herbert mailed his motion for state post-conviction relief on December 17, 1996, I hold that the period of time from that date until November 20, 2003, when Herbert's request for a new trial was finally denied, is tolled under § 2244(d)(2).

**B.     Herbert's Appeal Before the SJC**

The second key temporal period affecting the timeliness of Herbert's appeal is the period between February 10, 2004, when Herbert appealed his denied motion for a new trial to the gatekeeper justice of the SJC, and December 12, 2005, when the full SJC dismissed his appeal. More specifically, the timeliness of the petition turns on whether Herbert's appeal continued to be "pending," 28 U.S.C. § 2244(d)(2), after July 15, 2004,[8] when the gatekeeper denied him leave to appeal to the full SJC.  If the appeal was not still pending after that date, then 540 days will have elapsed between the gatekeeper justice's denial and the filing of Herbert's habeas petition.  However, if the appeal was pending during that period, then only twenty-five days will have transpired between the SJC's dismissal and the initiation of this habeas proceeding.

According to the First Circuit, "an application for post conviction relief is pending 'from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures.'" Currie v. Matesanz, 281 F.3d 261, 263 (1st Cir. 2002) (emphasis added) (quoting Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999), aff'd on other grounds, 531 U.S. 4 (2000)).  Massachusetts has adopted a somewhat unique procedure for appeals from motions for post-conviction relief in capital cases.  See Mass. Gen. Laws ch. 278 § 33E.   While an individual convicted of first-degree murder may file a motion for a new trial at any time in the state's trial court,  the denial of such a motion can be appealed only if a "single

---

[8] An alternative analysis would focus on August 4, 2004 -- not July 15 -- as that is the day when the gatekeeper justice denied Herbert's motion to reconsider.  Because the difference between using one date versus the other -- twenty-one days -- would not affect the timeliness of the petition, I use the July 15 date for the sake of simplicity.

justice of the supreme judicial court" finds that the appeal "presents a new and substantial question which ought to be determined by the full court."  Id.

The First Circuit has assumed that, as a result of section 33E, Massachusetts state law prohibits further relief after a gatekeeper justice denies permission to appeal.  As such, the First Circuit has held that a Massachusetts capital appellant's post-conviction appeal is "pending until the gatekeeper justice denie[s] his application for leave to appeal."  Currie, 281 F.3d at 266; see also Mazza v. Hall, 28 Fed. App'x 7, 7 (1st Cir. 2002) (per curiam) ("[A] properly filed application for state post conviction review is 'pending' for purposes of § 2244(d)(2) from the time it is filed in the state superior court until it is disposed of by an SJC single justice."). Indeed, there is substantial Massachusetts case law -- stemming from the SJC's opinion in Leaster v. Commonwealth, 385 Mass. 547, 548 (1982) -- indicating that "[a] single justice's denial of a defendant's petition for leave to appeal is final and unreviewable."  Dickerson v. Attorney Gen., 396 Mass. 740, 742 (1986); see also Commonwealth v. Scott, 437 Mass. 1008, 1008 (2002); Commonwealth v. Francis, 411 Mass. 579, 583 (1992); Commonwealth v. Robinson, 408 Mass. 245, 248 n.3 (1990).

Despite the absolutist language in many of these opinions, the SJC has in fact not adopted a strict prohibition against all appeals from a gatekeeper justice to the full SJC; to the contrary, it has carved out two very narrow exceptions.  Cf. Hurley v. Superior Court Dep't of the Trial Court, 424 Mass. 1008, 1009 (1997) (acknowledging the SJC's "superintendence power to review rulings in matters in which the Legislature has expressly stated that the decision of another court or judge 'shall be final.'").  The first exception was created in Fuller v. Commonwealth, 419 Mass. 1002 (1994), when the court "permit[ed a] petitioner to appeal" a gatekeeper justice's "denial of ancillary motions" to the appeal.  Parker v. Commonwealth, 448

Mass. 1021, 1022 (2007).  One year after <u>Fuller</u>, the SJC created a second exception to the finality of a gatekeeper justice's denial of leave to appeal, which is relevant here.

In <u>Haberek v. Commonwealth</u>, 421 Mass. 1005 (1995), a defendant "sought leave to appeal from a single justice of [the SJC]" to the full court, even though a "single justice [had already] denied the defendant's motions." <u>Id.</u> at 1005.  The SJC was clearly aware of the provisions laid out in section 33E, as it cited the statute in its opinion.  <u>See id.</u>  But instead of refusing to hear the appeal, the SJC entertained the appeal <u>and reversed the gatekeeper justice</u>.  Turning directly to the merits of the appeal, the SJC held that "it was error for the trial judge to deny . . . the defendant's motion for a new trial."  <u>Id.</u>

The factual background of <u>Haberek</u> is essential, as the case has been interpreted to apply only to its specific facts.  <u>See</u> <u>Commonwealth v. Shipps</u>, 440 Mass. 1018, 1019 n.1 (2003).[9]  In <u>Haberek</u>, 421 Mass. 1005, the SJC overturned the gatekeeper justice's ruling on the basis of a specific constitutional harm at issue in the case: "the same counsel was both the trial attorney and the appellate attorney, [and therefore] the ineffective assistance of counsel claim could not have been raised earlier."  <u>Id.</u> at 1005.  As such, the court held that, even though the gatekeeper justice had denied the defendant permission to appeal, "there must be a remand."  <u>Id.</u> at 1006.

Importantly, the very same constitutional harm that caused the SJC to overrule the gatekeeper justice in <u>Haberek</u> was at issue during Herbert's state-court appeal, and continues to be at issue in the instant petition for habeas corpus.  <u>See</u> Pet'r.'s Opp'n to Resp.'s Mot. to Dismiss at 2 ("In his motion for a new trial . . . the petitioner claim[ed] that he was denied effective assistance of counsel to the effect that both trial counsel and appellate counsel were one

---

[9] Ultimately, <u>Haberek</u> was overruled by <u>Commonwealth v. Cook</u>, 447 Mass. 1023 (2006), in which the SJC "declin[ed] to follow the <u>Haberek</u> case." <u>Id.</u> at 1023.  However, <u>Cook</u> was decided in 2006, after Herbert sought to appeal the decision of the gatekeeper justice in his case to the full SJC.

of the same."); <u>cf.</u> Pet. for Habeas Corpus ¶ 18.D. ("Appellate counsel and trial counsel were one

of the same. . . . Attorney Shapiro represented the Plaintiff at his original trial as well as on his

direct appeal to the Supreme Judicial Court.").  When ruling on his new trial motion, the

Superior Court expressly denied Herbert's ineffective assistance claims.  <u>See</u> <u>Commonwealth v.</u>

<u>Herbert</u>, Nos. 084646, 084647, slip op. at 1 n.1 (Mass. Super. Ct. Feb. 13, 2004).  As such,

Herbert's appeal fell squarely within the narrow exception carved out by <u>Haberek</u>; he sought

review of the gatekeeper justice's ruling that denied him relief with respect to the same form of

ineffective assistance of counsel as was at issue in <u>Haberek</u>.  Indeed, when he sought to appeal

the gatekeeper justice's denial of his appeal, Herbert explicitly invoked <u>Haberek</u>, asking the SJC

to "hear this particular case pursuant to Haberek v. Commonwealth, 421 Mass. 1005 (1995)."

Pet'r.'s Mem. Regarding Timeliness Ex. 5 (document # 17E).

       The First Circuit has never addressed a case in which a Massachusetts appellant has

appealed the ruling of a gatekeeper justice under one of the narrow exceptions acknowledged by

the SJC.  As such, the First Circuit's categorical statement that a state court defendant's appeal is

only pending "until it is disposed of by an SJC single justice," <u>Mazza</u>, 28 Fed. App'x at 7, is

dicta insofar as it relates to the question at issue here.  What is more, it is dicta that should not be

applied in this context.  As the First Circuit readily acknowledges, "[e]ach state is entitled to

formulate its own system of post conviction relief, and ought to be able to administer that system

free of federal interference." <u>Currie</u>, 281 F.3d at 270 (citing <u>Nino v. Galaza</u>, 183 F.3d 1003,

1007 (9th Cir. 1999)); <u>see</u> <u>id.</u> ("[W]e see 'no reason to second-guess states['] . . . decisions

regarding the disposition of state applications for post-conviction or other collateral review.'"

(quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 471 (5th Cir. 1999))).  The First Circuit recognizes

that the SJC would be able to "reach[] the merits of [a] petitioner's appeal" even after denial by a

gatekeeper justice <u>if</u> the SJC "overrule[d] its decision in <u>Leaster v. Commonwealth</u> and

construe[d] § 33E to provide for an appeal."  <u>Dickerson v. Walsh</u>, 750 F.2d 150, 154 (1st Cir.

1984) (citation omitted).  Since the Court has never evaluated a case arising under one of the

SJC's narrow exceptions to the standard section 33E rule, the First Circuit has simply not had an

opportunity to recognize that the SJC in fact <u>has</u> overruled <u>Leaster</u> in two very limited scenarios

-- one of which is present in this case.

      I find that, as a matter of state law as it existed at the time of Herbert's appeal, a capital

appellant asserting a unique ineffective assistance of counsel claim could legitimately appeal a

gatekeeper justice's denial to the full SJC.  As such, I hold that Herbert's appeal was pending

before the SJC from February 10, 2004, to December 12, 2005.

## III.   CONCLUSION

      For the foregoing reasons, I find that the petition for habeas corpus is timely under the

statutory tolling provisions of § 2244(d).  Given that ruling, I decline to reach the question of

whether the doctrine of equitable tolling ought to apply in this case.  The respondent's motion to

dismiss with respect to the statute of limitations **(document #19)** is **DENIED**.

**SO ORDERED.**

**Date:  March 19, 2010**         */s/ Nancy Gertner*

                        **NANCY GERTNER, U.S.D.C.**